UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PIERRE FRANCOIS,**

      Plaintiff,

vs.

                         CASE NO.:

**TNC (US) HOLDINGS, INC.**

      Defendant.

_____/

**DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446, Defendant, TNC (US) Holdings, Inc. ("Defendant" or "Nielsen"), by and through its undersigned counsel, hereby gives notice of removal of the case styled *Pierre Francois v. TNC (US) Holdings, Inc.*, Case No. 23-CA-017825, filed by Plaintiff, Pierre Francois, currently pending in the Circuit Court for the Ninth Judicial Circuit, in and for Orange County, Florida (the "State Court Action"), to the United States District Court for the Middle District of Florida, Orlando Division. As grounds, Defendant states as follows:

**I.    COMMENCEMENT OF ACTION IN STATE COURT AND TIMELINESS OF REMOVAL**

1. On or about December 20, 2023, Plaintiff, PIERRE FRANCOIS ("Plaintiff") initiated the State Court action by filing a Complaint with the

1

Circuit Court for the Ninth Judicial Circuit, in and for Orange, Florida, initiating the State Court Action, which named Nielsen as the sole defendant.

2. A Summons and Complaint was served on Defendant's Registered Agent on January 29, 2024.

3. Pursuant to 28 U.S.C. §1446(a), a true and legible copy of all processes, pleadings, motions and orders on file with the State Court Action is attached as **Exhibit A**. No further proceedings have occurred in the State Court Action.

4. A copy of the Notice contemporaneously filed in the Ninth Judicial Circuit, in and for Orange County, Florida, is attached hereto as **Exhibit B.**

5. Pursuant to 28 U.S.C. §1446(b), Defendant has timely filed this Notice of Removal within 30 days after receipt of a copy of Plaintiff's initial pleading.

## II. JURISDICTION

6. This Court has original jurisdiction over this action pursuant to the provisions of 28 U.S.C. §1332(a). This action could have been filed in this Court pursuant to 28 U.S.C. §1332 because there is a complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. As shown below, both requirements have been met.

7. Removal to this Court is proper under 28 U.S.C. §1446(a) because the United States District Court for the Middle District of Florida, Orlando Division, is the district and division within which the Circuit Court for the Ninth Judicial Circuit in and for Orange County, Florida is located.

III. DIVERSITY OF CITIZENSHIP

A. Plaintiff is a Citizen of Florida

8. For an individual, "[c]itizenship is equivalent to 'domicile' . . . [which is] the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (quotation omitted). "A person's domicile is determined by a review of the 'totality of the evidence' . . . ." *Comprehensive Care Corp v. Katzman*, No. 8:09-cv-1375, 2009 WL 3157634, at * 2 (M.D. Fla. 2009) (citing *Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349 (M.D. Fla. 2001)). Evidence that may be factored into a court's consideration includes affidavits and other testimony, driver's license, tax returns, banking statements, voter registration, medical records, utility phone bills, employment records, vehicle registration, professional licenses, membership in religious, recreational and business organizations, location of real property, and place of employment. *See e.g., Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005); *McDonald*

*v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279, 1281 (M.D. Ala. 1998); *Smyth v. Hillstone Rest. Group, Inc.*, No. 13-80217, 2013 WL 2048188, at *2 (S.D. Fla. 2013).

9. Plaintiff is, and was at the time of filing the Complaint and at the time of removal, a citizen of the State of Florida. (*See* Declaration of Kelli Dawson, attached as **Exhibit C**). In his Charge of Discrimination, Plaintiff listed the same Florida address Defendant has in its records for Plaintiff's last known residential address. (*See* **Exhibit D**). As a permanent resident of Florida, Plaintiff is domiciled in, and therefore a citizen of the state of Florida. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011) (holding that an assertion of permanent residency sufficiently alleges domicile). *See also Smyth*, 2013 WL 2048188 at *2.

10. Further, Plaintiff states he is a resident of Florida. (Compl. ¶ 1).

**B.   Defendant is Not a Citizen of Florida**

11. Diversity of citizenship exists because Defendant is not a citizen of the State of Florida within the meaning of 28 U.S.C. §1332(c)(1).

12. According to the United States Supreme Court's test, set forth in *Hertz Corp. v. Friend*, 559 U.S. 77; 130 S. Ct. 1181 (2010), a corporation's principal place of business is where a corporation's officers direct, control, and coordinate the corporation's activities, sometimes referred to as the

corporation's "nerve center." *Id.* at 93. In practice, the "nerve center" is normally where the corporation maintains its headquarters.

13. Defendant TNC (US) Holdings, Inc. is a foreign corporation incorporated in New York. New York is also where Nielsen's senior management and high level officers manage its executive and administrative operations, including operations relating to administering company-wide policies and procedures, legal affairs and general business operations. See the Declaration of Kelli Dawson, attached hereto as **Exhibit C.**

### IV.    AMOUNT IN CONTROVERSY

14. Under 28 U.S.C. §1332(a), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."

15. Plaintiff brings claims for violations of the Florida Civil Rights Act, Fla. Stat. § 760, et seq. ("FCRA"), alleging "disparate treatment" based upon his race; negligence; and vicarious liability. In his Complaint, Plaintiff alleges damages in excess of $60,000.00 (Compl. ¶¶ 19, 33), exclusive of costs, interest, and attorney's fees.

16. Under the FCRA, a plaintiff may recover, among other things, the following types of relief: lost wages; compensatory damages including, but not limited to damages for mental anguish, loss of dignity, and any other intangible

injury; punitive damages; and attorneys' fees and costs. *See Fla. Stat.* § 760.11(5).

17. Plaintiff is seeking compensatory damages, lost wages, prejudgment interest, and treble damages. *See* Compl. at subparagraphs (a) through (e) in the Prayer for Relief, immediately subsequent to paragraph 33.

### A. Plaintiff's Claims For Lost Wages, Compensatory Damages, and Punitive Damages Will Exceed $75,000

18. Based on his personnel records with Defendant, Plaintiff was an hourly employee last earning approximately $58,984.44 per year. See **Exhibit C.** Plaintiff's employment ended on August 14, 2023. By the time of trial – approximately one year from now – those lost wages will exceed $88,000.00. *See Jiles v. United Parcel Service, Inc.*, No. 3:07–cv–1115–J–25MCR, 2008 WL 11336707, at *3 (M.D. Fla. January 10, 2008) ("the Court should calculate back pay from the date of termination until, at a minimum, the proposed trial date."); *Brown v. Cunningham Lindsey U.S., Inc.*, No. 305CV141J32HTS, 2005 WL 1126670, at *3 (M.D. Fla. May 11, 2005) (suggesting that back pay in FCRA case "is calculated from the date of the adverse employment action until the date of judgment" and citing *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1472–73 (11 th Cir. 1985)); *Destel v. McRoberts Protective Agency, Inc.*, No. 03–62067–Civ, 2004 WL 746293, at *4 n.3 (S.D. Fla. Feb. 17, 2004) (reviewing motion to remand in FCRA case and stating that "the Court notes that Plaintiff's figure

6

should be doubled to more closely approximate the award Plaintiff will be entitled to on the proposed trial date"); In addition, courts have considered a plaintiff's potential recovery of front pay when calculating the amount in controversy. *See, e.g., Love v. Northern Tool & Equipment Co., Inc.*, No. 08-20453, 2008 WL 2955124, at *4 (S.D. Fla. Aug. 1, 2008) (considering front pay in calculating amount in controversy for removal purposes); *Brown v. Cunninham Lindsey U.S., Inc.*, No. 3:05-cv-141, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005) (valuing reinstatement or front pay for purposes of determining jurisdictional amount); *Logsdon v. Duron, Inc.*, No. 3:05-cv-243, 2005 WL 1163095, at *5 (M.D. Fla. May 17, 2005) (same).

19. The fact that a plaintiff can potentially be awarded thousands of dollars in compensatory damages for the potential humiliation surrounding the alleged discrimination or other injuries and awarded back pay/front pay damages, must be considered in determining the jurisdictional amount of a claim. *See Leslie v. BancTec Service Corp.*, 928 F. Supp. 341, 350 (S.D. N.Y. June 10, 1996). Courts have also considered compensatory damages in determining the amount in controversy. "While it is difficult to quantify the value of these damages, for purposes of determining the amount in controversy, a defendant may satisfy its burden by submitting evidence of damages from decisions in comparable cases." *Schmidt v. Pantry, Inc.*, No. 1:11-cv-228, 2012 WL 1313490,

at *3 (N.D. Fla. Mar. 6, 2012). Jury verdict and settlement reports in employment-related retaliation cases where compensatory damages are awarded establish that successful plaintiffs routinely recover awards that would satisfy or exceed the jurisdictional threshold. *See, e.g., Stone v. GEICO General Ins. Co.*, No. 8:05-cv-636, 2009 WL 3720954 (M.D. Fla. Nov. 5, 2009) (jury awarded $200,000.00 in compensatory damages for emotional pain and mental anguish); *EEOC v. Federal Express Corp.*, 2004 WL 6024553 (M.D. Fla. Dec. 16, 2004) (noting that court reduced award for emotional pain and suffering in retaliation case from $1,370,000 to $350,000). Here, Plaintiff seeking compensatory damages alone could exceed the jurisdictional threshold.

20.  Plaintiff's request for attorneys' fees and costs must also be taken into account when calculating the amount in controversy. Indeed, when a statute, such as the FCRA, "authorizes the recovery of attorneys' fees, a reasonable amount of those fees is included in the amount in controversy." *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808, n.4 (11th Cir. 2003) (attorneys' fees are included in the amount in controversy if they are provided for under statute); *Brown v. Cunningham Lindsey U.S., Inc.*, No. 3:05-cv-141, 2005 WL 1126670, at *4 (M.D. Fla. May 11, 2005) (including prospective attorneys' fees in the amount in controversy) (citing *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)). Because attorneys' fees in

8

employment cases often exceed the jurisdictional threshold of $75,000, there is no question that the amount in controversy has been satisfied in the instant case. *See, e.g., EEOC v. Enterprise Leasing Co., Inc.*, No. 8:00-cv-2012, 2003 WL 21659097, at *8 (M.D. Fla. May 16, 2003) (intervening attorney was awarded $77,165.00 for work performed in a non-complex case by lead counsel even after reducing lead counsel's hourly rate, the number of hours billed, and adjusting the lodestar).

21. The various types of alleged damages sought in Plaintiff's Complaint make clear that the amount in controversy exceeds $75,000.00. Although Defendant denies that Plaintiff is entitled to these damages, these are the damages that Plaintiff is seeking in this action and those damages represent the amount in controversy. The amount in controversy requirement is satisfied. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) ("a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it").

**B.     Plaintiff Has Made a Post-Suit Demand for Over $75,000.00.**

22. Courts differentiate between pre-suit and post-suit settlement demands, considering post-suit settlement demands as "other paper" for the purpose of ascertaining that the case is removable, thereby triggering the thirty-day filing period. *Gleaton & Demaria Commercial Dev., LLC v. Westchester Surplus*

*Lines Ins. Co.*, No. 3:18-CV-1913-MCR-GRJ, 2018 WL 8496001, at *2 (N.D. Fla. Sept. 21, 2018); *see Musser v. Walmart Stores E., L.P.*, No. 1:16-CV-62231, 2017 WL 1337477, at *3 (S.D. Fla. Apr. 12, 2017) ("[c]ourts routinely permit 'the use of post-suit demand letters in determining the amount in controversy requirement.'") (quoting *Saberton v. Sears Roebuck & Co.*, 392 F. Supp. 2d 1358, 1360 (M.D. Fla. 2005)).

23.  *More than two months after* Plaintiff filed his state court Complaint, Plaintiff unambiguously made a post-suit settlement demand to Defendant, stating that Plaintiff was amenable to settling the suit for $300,000.00. Specifically, on February 27, 2024, Plaintiff's counsel engaged in email correspondence with Defendant's counsel, wherein Plaintiff's counsel advised that Plaintiff had authorized him to demand $300,000.00 in full settlement of all claims. At this point any uncertainty Defendant may have had regarding the amount in controversy vanished. *See* the Declaration of Ashley Donnell, attached hereto as **Exhibit E.**

## V.  CONCLUSION

The various types of alleged damages sought in Plaintiff's Complaint make clear that the amount in controversy exceeds $75,000.00. Although Defendant denies that Plaintiff is entitled to these damages, these are the damages that Plaintiff is seeking in this action and those damages represent the

amount in controversy. The amount in controversy requirement is satisfied. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) ("a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it").

WHEREFORE, Defendant respectfully requests that the case styled *Pierre Francois v. TNC (US) Holdings, Inc.*, Case No. 23-CA-017825, filed by Plaintiff, Pierre Francois, currently pending in the Circuit Court for the Ninth Judicial Circuit, in and for Orange County, Florida (the "State Court Action"), to the United States District Court for the Middle District of Florida, Orlando Division.

DATED: February 28, 2024.

Respectfully submitted,

/s/ *Lara J. Peppard*
Lara J. Peppard, Esq.
Florida Bar No. 520055
lara.peppard@ogletree.com
Ashley N. Donnell, Esq.
Florida Bar No. 100535
ashley.donnell@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
100 North Tampa, Suite 3600
Tampa, Florida 33602
Telephone: 813- 289-1247
Facsimile:  813-289-6530
Secondary email:
TAMdocketing@ogletree.com
elba.chinea@ogletree.com

denise.banach@ogletree.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY certify** that on February 28, 2024, I filed the foregoing with the Court using the CM/ECF system to:

KA'JUEL J. WASHINGTON, ESQ.
THE WASHINGTON TRIAL GROUP, PLLC
37 N. Orange Ave., Suite 500
Orlando, Florida 32801
Telephone: 407.606.5715
Facsimile: 407.236.0430
Attorney(s) for Plaintiff

*/s/ Lara J. Peppard*
Attorney